**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 19-cv-81128-SINGHAL/Matthewman**

NAKAVA, LLC, a Florida limited liability
company,

      Plaintiff,

v.

THE SOUTH PACIFIC ELIXIR COMPANY,
a Florida for profit corporation,

      Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Nakava, LLC ("Nakava LLC") brings this action against Defendant The South Pacific Elixir Company ("SPEC") for trademark infringement, *see* 15 U.S.C. § 1114, under the Lanham Act, as well as common-law trademark infringement.  It also brings one count for unfair competition, *see id.* § 1125.  The claims emanate from SPEC's continued use of Nakava LLC's registered trademark "Nakava" ("Mark").  Currently before the Court are Plaintiff's Motion for Summary Judgment ("Pl.'s MSJ") (DE [50]) and Defendant's Cross-Motion for Summary Judgment ("Def.'s MSJ") (DE [56]).  The Court has reviewed the following: Plaintiff's MSJ, Defendant's MSJ, Plaintiff's Statement of Facts ("PSOF") (DE [51]), Defendant's Response[1] (DE [56]), Defendant's Opposing Statement of Material Facts ("DSOF") (DE [57]), Plaintiff's Reply in Support of its Motion for Summary Judgment (DE [59]), Plaintiff's Response to Defendant's Additional

_____

[1] Defendant has incorporated its response in opposition to Plaintiff's motion for summary judgment into the same pleading as its Cross-Motion for Summary Judgment (DE [56]).

Statement of Material Facts (DE [60]), Plaintiff's Response to Defendant's Motion for Summary Judgment (DE [61]), and Defendant's Reply in Support of its Cross-Motion for Summary Judgment (DE [62]).  The Court has also reviewed the attachments and exhibits in the record, as well as the applicable law.

Taking the foregoing into consideration and being fully advised in the premises, Plaintiff's MSJ and Defendant's MSJ are both **DENIED**.  Nakava LLC is not entitled to summary judgment on its trademark-infringement claims because there remains a disputed issue of material fact as to whether Nakava LLC abandoned the Mark at some point between 2005 and 2016.  For this same reason, SPEC is not entitled to summary judgment on its affirmative defense of abandonment.  This order follows.

## I.    <u>LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018).  An issue is "genuine" if a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof.  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).  And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  "[W]here the material facts are undisputed

and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 F. App'x 817, 820 (11th Cir. 2015).

## II.   BACKGROUND AND UNDISPUTED FACTS

Three entrepreneurs (Jeffrey Bowman, Diane Lysogorski, and Laurent Olivier) (collectively, "Founders") formed Defendant The South Pacific Elixir Company in 2001 for the purpose of operating a kava[2] bar ("Kava Bar") in South Florida—a move they believed would make it the first kava bar in North America.  PSOF ¶ 1.  They initially named it "Nakamal."  *Id.*  Shortly after opening the Kava Bar, they decided to undertake franchising opportunities.  DSOF ¶ 2.  SPEC applied to protect the name "Nakamal," but the U.S. Patent and Trademark Office ("USPTO") denied the application.  PSOF ¶ 3.  SPEC tried again, filing an application for protection of the wordmark "Nakava," a portmanteau of "Nakamal" and "kava."  *Id.*

Three years later, in 2004, the Founders were advised that they should create a separate limited liability company, and did so, forming Plaintiff Nakava, LLC.  *Id.* ¶ 4; *see also* Ex. A to Def.'s Not. of Filing (DE [26-1]).  A little over a year after Nakava LLC was formed, the trademark application for the Mark was granted.  DSOF ¶ 5.  Formally, SPEC operated the Kava Bar under the name bearing the Mark.  *See* PSOF ¶ 5.

---

[2] For exotic-drink novices, according to the Merriam-Webster Dictionary, kava is "an Australasian shrubby pepper (*Piper methysticum*) from whose crushed root an intoxicating beverage is made; the dried rhizome and roots of the kava used especially as a dietary supplement chiefly to relieve stress and anxiety."  *Kava*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/kava (last visited August 10, 2020).

### A.      SPEC Assigns the Mark to Nakava LLC ("2005 Assignment")

On May 25, 2005, SPEC assigned its interest in the Mark to Nakava LLC, as the franchisor, to grant franchisees the rights of use.  PSOF ¶ 6.; *see also* Ex. D to Def.'s Not. of Filing (DE [26-4]).  The 2005 Assignment, recorded with the USPTO on May 31, 2005, *see* PSOF ¶ 7, stated that the nature of the conveyance assigned "the entire interest and the goodwill."  Ex. D to Def.'s Not. of Filing (DE [26-4]).  SPEC continued to operate the Kava Bar with its name bearing the Mark.  PSOF ¶ 8.  SPEC and Nakava LLC never executed a written license for SPEC to use the Mark as the name of the Kava Bar.  *Id.*

### B.      Transitioning the Business Model

Nakava LLC rented space in Boca Raton, Florida, for the franchise operation headquarters, and began rolling out its business infrastructure, such as designing a website and preparing a franchise-offering circular.  *Id.* ¶¶ 9–10.  Unfortunately, the business model did not succeed as hoped for and, after several years of inability to sell franchises, Nakava LLC transitioned to selling kava online to retail customers.  *Id.* ¶¶ 10–11.  SPEC disputes that when Nakava LLC transitioned to this new business model, the product was sold under a brand name that included the Mark.  DSOF ¶ 11.  In SPEC's view, Nakava LLC had *attempted* to market the brand for purposes of franchising, but abandoned efforts sometime in 2005.  *Id.* ¶ 12.

### C.      Current Effort to Restart the Brand

In 2016, Nakava LLC registered the Mark with the USPTO.  PSOF ¶ 13.  Nakava LLC describes this registration as a "*re*-registration," while SPEC argues it was an *initial* registration.  *Compare id.*, *with* DSOF ¶ 13.  SPEC also insists that Nakava LLC was not entitled to *register* the Mark because it abandoned the Mark after years of non-use.  *Id.*

The relationship among the Founders deteriorated and Olivier sold a portion of his interests in SPEC to new investors.  PSOF ¶ 14.  With SPEC now controlled by the Founders and Olivier's new investors, the fight for control of SPEC proceeded to litigation. *Id.*; *see also* Ex. I to Def.'s Not. of Filing (DE [26-9]); *S. Pac. Elixir Co. v. Laurent Olivier et al.*, Case No. 502015CA010112XXXXMB (Fla. 15th Cir. Ct. June 30, 2016).  Shortly after filing the lawsuit, the parties entered an agreed order and temporary restraining order ("TRO") where Bowman and Lysogorski surrendered their control of SPEC to Olivier and his new business partners.  PSOF ¶ 15.  The TRO further ordered SPEC to deliver the keys to the storefront and the inventory to Bowman and Lysogorski.  Ex. I to Def.'s Not. of Filing (DE [26-9]).  Post litigation, Bowman and Lysogorski no longer had any ownership interest in SPEC.  PSOF ¶ 15.  Post litigation, there is no overlap in ownership or cooperation between SPEC and Nakava LLC; Bowman and Lysogorski have no interest in SPEC, and Olivier has no interest in Nakava LLC.  *Id.* ¶ 16.

### D.   Nakava LLC Sends Cease-and-Desist Letters in 2019

In May 2019, Nakava LLC sent two letters ("May 2019 Letters") to SPEC that purported to terminate SPEC's use of the Mark.  PSOF ¶ 19; *see also* Ex. E to Def.'s Not. of Filing (DE [26-5]); Ex. P to Aff. of Jeffrey Bowman (DE [19-1]).  Nakava LLC demanded SPEC immediately stop using the Mark as the name of the Kava Bar, giving a deadline for compliance of May 30, 2019.  Because SPEC continues to use the Mark in defiance of the two letters, Nakava LLC filed this action August 9, 2019.  PSOF ¶ 20.

The Complaint states four causes of action: (1) trademark infringement under the Lanham Act, *see* 15 U.S.C. § 1114; (2) trademark infringement under the Lanham Act, *see* 15 U.S.C. § 1125; (3) unfair competition under the Lanham Act, *see* 15 U.S.C. §

1125; and (4) common-law trademark infringement.   SPEC raises several affirmative defenses.  Specifically, relevant to the analysis of Plaintiff's MSJ and Defendant's MSJ, it argues that Nakava LLC abandoned the Mark through nonuse at some point between 2005 and 2019.

## III.   PARTIES' ARGUMENTS

In moving for summary judgment, Nakava LLC argues there is no genuine dispute of material fact that it has rights in the Mark.  And, it argues that the "new" SPEC—that is, SPEC since Bowman and Lysogorski relinquished their controlling interest to Olivier and the new investors—continues to operate the Kava Bar under the Mark despite the May 2019 Letters demanding it to cease using the Mark.  According to Nakava LLC, this creates a substantial likelihood of confusion in the market.

SPEC's initial argument is that Nakava LLC is not entitled to summary judgment because it cannot prove a prima facie case for trademark infringement.  In other words, SPEC argues that Nakava LLC cannot prove under the summary-judgment standard that it is entitled to trademark protection—that it has rights in the Mark.  In arguing this, SPEC also raises what appears to be a novel argument that Nakava LLC committed fraud in inducing SPEC to execute the 2005 Assignment.

In the alternative, SPEC argues, even if Nakava LLC were entitled to trademark protection over the Mark, it is still not entitled to summary judgment because of five affirmative defenses that it pled.  Specifically, of interest to the Court is SPEC's affirmative defense of abandonment.  The Court finds SPEC's abandonment argument persuasive but finds it most fitting to be in the context of Nakava LLC's prima facie case.  In other words, because Nakava LLC could not have been the owner of the Mark at the time it

sent the May 2019 Letters to SPEC if it indeed abandoned the Mark prior to sending them, whether—and, if so, when—Nakava LLC abandoned the Mark is consequential in whether it owned the Mark.  Because genuine issues of material fact remain as to whether Nakava LLC abandoned the Mark prior to sending the May 2019 Letters, neither side is entitled to summary judgment.

## IV.   DISCUSSION

### A.   Claim for Trademark Infringement

To prevail on a claim for trademark infringement, a plaintiff must show that "(1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991) (holding the analysis for trademark infringement under the Lanham Act also applies to claims for common law trademark infringement).  It is axiomatic that, to prove the first prong, the plaintiff must show "that it had trademark rights in the mark or name at issue," *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)—simply, that it owned the mark at issue.

Thus, to satisfy the first prong, Nakava LLC must prove four separate factors: (1) it had "rights in the Mark" (simply, that it owns the Mark); (2) that its granting SPEC rights to use the Mark was a license; (3) that it terminated the license upon sending the cease-and-desist letter; and (4) that SPEC continued to use the Mark in commerce.  *See Burger King Corp.*, 710 F.2d at 1492; *Lone Star Steakhouse*, 106 F.3d at 358.  The Court will address each of these requirements in turn.

## B.   **First Prong: Use of the Mark in Commerce Without Nakava LLC's Consent**

### 1.   **Ownership of the Mark**

It is undisputed that SPEC owned the Mark until 2005.  It is further undisputed that, pursuant to the 2005 Assignment—which was a valid assignment—Nakava LLC took ownership of the Mark in 2005.  *See Sream, Inc. v. Grateful J's, Inc.*, 2017 WL 6409004, at *3 (S.D. Fla. Oct. 13, 2017) ("[A]ssignment of a trademark under the Lanham Act requires (1) sale or transfer of all rights in the mark; and (2) assignment as well of the business's goodwill connected with the mark's use.").  The dispute that remains is whether Nakava LLC owned the Mark when it sent the May 2019 Letters.  However, that is best discussed below in the analysis on the third factor—whether Nakava LLC terminated the lease upon sending the May 2019 Letters.  For purposes of this first factor, it is sufficient to establish that Nakava LLC took ownership of the Mark in 2005.

SPEC raises a novel argument here, now challenging the validity of the 2005 Assignment.  It claims that Nakava LLC committed fraud in obtaining the Mark.  SPEC contends Nakava LLC made material misrepresentations to the USPTO in registering it.  Thus, at the very least, SPEC insists there remain genuine disputes of material fact as to whether Nakava LLC obtained "ownership" of the Mark improperly in 2005.  The Court rejects this novel theory by SPEC.  At best, this argument is an unpled affirmative defense that is improper to raise now*. See Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 321 (3d Cir. 2006) (holding failure to raise affirmative defense or appropriate motion generally results in the waiver of that defense).  At worst, this is a contrived allegation, calculated only to defeat summary judgment.  *See Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) ("A nonmoving party may not manufacture a

dispute of fact merely to defeat a motion for summary judgment."). In either instance, the Court finds there is no basis in fact to support this theory.

Therefore, for the first factor—ownership of the Mark—it is undisputed that Nakava LLC owned the Mark in 2005 upon the 2005 Assignment. This factor weighs in favor of Nakava LLC.

### 2.    The Grant of Use as an Implied License

It is also undisputed that, following the 2005 Assignment, Nakava LLC allowed SPEC to continue operating the Kava Bar under the name bearing the Mark. The only way to interpret this is an implied license by Nakava LLC to SPEC. "Acquiescence to one's use of a trademark is analogous to an implied license to use the mark." *Coach House Rest., Inc. v. Coach & Six Rests. Inc.*, 934 F.2d 1551, 1563 (11th Cir. 1991).

SPEC's response to this is simply inadequate as a matter of law. Its argument that neither Bowman nor Lysogorski "mentioned any existing license, 'implied' or otherwise" misses the point. The law does not require any express contract, promise, or even certain words to find an implied license. The very nature of an implied license is creation-by-conduct—that the owner "permits the use of a copyrighted work in a particular manner." *Karlson v. Red Door Homes, LLC*, 611 F. App'x 566, 569 (11th Cir. 2015) (quotation omitted). In other words, "[t]he grant of a nonexclusive license does not require a writing under the Copyright Act, and it may occur orally or may be implied from the copyright owner's conduct." *Id.* That Nakava LLC knew SPEC operated the Kava Bar under the name of the Mark and allowed it to continue after the 2005 Assignment is sufficient to establish an implied license.

### 3.    Termination of the Implied License

It is well established that an implied license is terminable at will.  *Menendez v. Holt*, 128 U.S. 514, 524 (1888).  Of course, the successful termination of an implied license, however, presupposes ownership over the trademark.  That is to say, the licensor purporting to terminate the licensee's allowed use of the trademark must own the mark at the time of termination.

Nakava LLC argues that its sending of the May 2019 Letters terminated the implied license for SPEC to use the Mark.  Its argument operates under the unquestioned understanding that it has owned the Mark since the 2005 Assignment and continued to own it through its sending the May 2019 Letters.  SPEC, however, argues that Nakava LLC abandoned the Mark at some point prior to its sending of the May 2019 Letters and, therefore, had no legal justification to terminate the implied license.  Both parties cannot be correct; Nakava LLC could not have owned the Mark in May 2019 if it abandoned use of the Mark prior to that moment in time.

> ### i.    The May 2019 Letters was a proper way for Nakava LLC to terminate the implied license *if* it owned the Mark in May 2019.

One way to terminate an implied license is by sending a cease-and-desist letter to the licensee.  *See, e.g.*, *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 2005 WL 8160544, at *6 (N.D. Ga. Mar. 24, 2005).  Thus, this analysis is simplified greatly if Nakava LLC owned the Mark at the time it sent the May 2019 Letters.  However, that is not undisputed because of SPEC's affirmative defense that Nakava LLC abandoned the Mark prior to sending the May 2019 Letters.

      **ii.**     **There are genuine issues of material fact as to whether Nakava LLC abandoned use of the Mark prior to sending the May 2019 Letters.**

"Under the Lanham Act, a federally registered trademark is considered abandoned if its use has been discontinued with intent not to resume use."  *Buccallati Holding Italia SPA v. Laura Buccellati, LLC*, 5 F. Supp. 3d 1368, 1376 (S.D. Fla. 2014).  Specifically, the statutory language provides that:

> A mark shall be deemed to be 'abandoned' either:
>
> (1) When its use has been discontinued with intent not to resume such use.  Intent not to resume may be inferred from circumstances.  Nonuse for 3 consecutive years shall be prima facie evidence of abandonment.  "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.
>
> (2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark.  Purchaser motivation shall not be a test for determining abandonment under this paragraph.

15 U.S.C. § 1127.  Proving abandonment is not inconsequential.  If "the mark is deemed abandoned, [it] falls into the public domain and is free for all to use . . . . Abandonment paves the way for future possession and property in any other person."  *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002) (internal quotation omitted).  Therefore, case law instructs that defendants are required to show "strict proof" that a plaintiff abandoned its mark.  *E.g.*, *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1516 (11th Cir. 1984).

      SPEC insists that Nakava LLC "discontinued" use of the Mark "for many years" with no intent to resume using it until it filed new applications with the USPTO in February 2016, and only for the purpose of "damaging SPEC."  However, as Nakava LLC points

out, the only record evidence presented by SPEC is its review of Nakava LLC's website and its own "internet research."  *See* Def.'s MSJ ¶¶ 17–26.  Even assuming these representations by SPEC are undisputed, which they are not, they are not sufficient to reach "strict proof" necessary to prove abandonment on a motion for summary judgment.

Exactly what constitutes "strict proof" is somewhat of an amorphous standard.  To the Court's knowledge, the Eleventh Circuit has not exactly defined it.  In *Cumulus Media*, the court stopped just short of providing a definition.  *See* 304 F.3d at 1173–75.  Yet the approach taken by the Eleventh Circuit is consistent with its sister circuits.  For instance, in *Yucaipa Corporate Initiatives Fund I, LP v. Hawaiian Airlines, Inc.*, 2014 WL 12564354, at *3 (C.D. Cal. Dec. 17, 2014), the California district court noted that the Ninth Circuit had not defined it, either.  Thus, left to its own interpretation, the *Yucaipa* court, citing other district courts, equated the "strict proof" standard to the "clear and convincing" standard.  *Id.*  The Court is persuaded by this and adopts this standard, as well.  Because "a finding of abandonment works [as] an involuntary forfeiture of rights," thus justifying "a stringent, heavy, or strict burden of proof," *Cumulus Media*, 304 F.3d at 1175, the Court sees fit to apply the clear-and-convincing standard.[3]

While the limited evidence presented by SPEC is not nearly enough to constitute "strict proof," it *is* enough to preclude Nakava LLC's summary judgment.  The fact that Nakava LLC allowed SPEC to use the Mark for the Kava Bar does not constitute

---

[3] However, the Court is not entirely sure this helps, either.  Courts across the various jurisdictions have long expressed difficulty in defining the clear-and-convincing-evidence standard.  *See Gardner v. Wilkinson*, 643 F.2d 1135, 1137 (5th Cir. 1981) ("Courts have more difficulty precisely defining 'clear and convincing evidence,' but they define the standard as requiring greater certainty than the preponderance of the evidence standard although perhaps less than the reasonable doubt standard.").

abandonment.  Rather, it shows the very existence of an implied license.  *See Conagra*, 743 F.2d at 1516 ("Permitted infringement on the mark holder's exclusive rights for some period of time does not constitute nonuse of the mark sufficient to support an abandonment.").  However, there remain existing questions as to what Nakava LLC did under the Mark as it relates to its own business of retail distribution.  It cannot provide any evidence of interstate sales, nor can it provide any evidence of the number of wholesale customers it had in May 2019.  To rebut Nakava LLC's claim that SPEC used only its own "internet research," SPEC correctly points out that Nakava LLC only offered evidence of screenshots from its website dated *after* May 2019.

For purposes of summary judgment, neither party can prove this third factor of the first prong.  Nakava LLC cannot show that it is entitled to judgment as a matter of law that the May 2019 Letters properly terminated SPEC's implied license to use the Mark because SPEC has raised sufficient allegations that it abandoned the Mark prior to sending the May 2019 Letters.  Equally, SPEC cannot prove by "strict proof" that Nakava LLC has abandoned the Mark—and, more importantly, did so *before* the May 2019 Letters.  This must be left to a factfinder.

### 4.    Continuing Use of the Mark

The final factor of the first prong— that SPEC continued to use the Mark in commerce after Nakava LLC attempted to terminate the implied license—is undisputed. SPEC does not dispute that it continues to use the Mark today.

### C.    <u>Likelihood of Confusion</u>

For the second prong, "[c]ourts in the Eleventh Circuit consider seven factors when determining whether or not a likelihood of consumer confusion exists: (1) type of mark;

(2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' trade channels and customers; (5) similarity of advertising media; (6) the defendant's intent; and (7) actual confusion." *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat. Univ., Inc.*, 91 F. Supp. 3d 1265, 1274 (S.D. Fla. 2015); *see also ATP Sci. Proprietary, Ltd. v. Bacarella*, 2020 WL 3868701, at \*4–6 (S.D. Fla. July 9, 2020).  "Of these factors, the type of mark and evidence of actual confusion are considered the most important." *Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1274.  Moreover, these factors "are just that— factors." *ATP Sci. Proprietary, Ltd.*, 2020 WL 3868701, at \*6; *see also You Fit, Inc. v. Pleasanton Fitness, LLC*, 2013 WL 521784, at \*2 (M.D. Fla. Feb. 11, 2013) ("When balancing the factors, the issue of likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists.").

### 1.      The Type of Mark

The Eleventh Circuit instructs the district courts first to classify the type of mark to determine "whether it is strong or weak." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (establishing four categories of marks: generic, descriptive, suggestive, and arbitrary).  Of the four categories, arbitrary marks, those that bear no relationship to the product, "are the strongest." *Id.*  Here, the Mark is an arbitrary mark, entitled to the strongest protection under the case law.  As explained above, the Mark is a portmanteau of the original kava bar's name "Nakamal" and the name of the product "kava"—creating the original name "Nakava."

"Also important in gauging the strength of a mark is the degree to which third parties make use of the mark." *Frehling Enters.*, 192 F.3d at 1336.  "There is no hard-

and-fast rule about the number of other users which diminish a mark's strength.  Courts have found that a mark has been weakened by third-party use based on a relatively small number of third-party users."  *Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1276 (internal citation omitted).  Here, there is no indication that anyone other than SPEC is a third-party user of the Mark.  Thus, with only *one* third-party user in alleged violation of the trademark, Nakava LLC's position strengthens.  However, a factor that then weakens its position is that SPEC's alleged unlawful use of the Mark is in the same field.  *See Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1276 ("Third-party use is also considered more potent when the users are operating in the same field as the plaintiff.").

Nevertheless, the Court is to balance all of this; and, in so doing, the Court finds the Mark is entitled to the strongest protection.  The Mark is arbitrary.  It is an amalgamation of two words, one of which was an original name for an establishment; and is used by only one third-party user.  Therefore, this prong weighs in favor of Nakava LLC.

## 2.    The Similarity of the Mark

For the second factor, the Court is to "compare[] the marks and consider[] the overall impressions that the marks create, including the sound, appearance, and manner in which they are used."  *Frehling Enters.*, 192 F.3d at 1337.  This prong demands no serious analysis; Nakava LLC and SPEC use the exact same mark.  Thus, this prong weighs in favor of Nakava LLC, as well.  *See, e.g.*, *Eli Research, LLC v. Must Have Info Inc.*, 2015 WL 5934611, at *5 (M.D. Fla. Oct. 6, 2015) ("Defendants use the exact same mark as AAH—the CPC mark.  As such, the similarities of the mark indicate to the Court that the use of the CPC mark is likely to cause confusion.").

### 3.    The Similarity of the Products the Mark Represents

For the third factor, "the Court must examine whether the parties' services are the kind that the public attributes to a single source." *Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1277.  "The greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983).  This inquiry "does not turn on whether the services can be distinguished by consumers, but on whether the services are so related in the minds of consumers that they get the sense that a single producer is likely to" offer both services." *Id.* (quotation omitted).

Nakava LLC uses the Mark for the sale of goods in interstate commerce across the United States, though disputed by SPEC.  It is used only in the sale of products to wholesale purchasers.  Conversely, SPEC uses the Mark on the Kava Bar—a stand-alone retail bar and restaurant in the single location of Boca Raton, Florida.  Neither party cites to any cases in their favor and the Court cannot find anything compelling in the jurisprudence on this factor.  Left on its own accord, the Court finds this factor favors SPEC's position.  The dichotomy between Nakava LLC's business selling goods and SPEC's stand-alone bar and restaurant is sufficient to find it unlikely to create the likelihood of confusion.

### 4.    The Similarity of the Parties' Trade Channels and Customers

"Likelihood of confusion is more probable if the products are sold through the same channels to the same purchasers." *Deltona Transformer Corp. v. Wal-Mart Stores, Inc.*, 115 F. Supp. 2d 1361, 1369 (M.D. Fla. 2000).  It follows that "[d]issimilarities between the retail outlets for the parties' services reduce the possibility of confusion." *Freedom Sav.*

& *Loan Ass'n v. Way*, 757 F.2d 1176, 1184 (11th Cir. 1985); *see also Fehling*, 192 F.3d at 1339.  "This factor takes into consideration where, how and to whom the services are sold.  The Court also must consider the level of sophistication and investment required of the parties' customers, which can influence the likelihood of confusion based on a mark." *Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1279 (internal citation omitted).  "While 'the parties' outlets and customer bases need not be identical, some degree of overlap should be present' to weigh in favor of a likelihood of confusion." *Id.* (quoting *Frehling*, 192 F.3d at 1339).

The third and fourth factors are closely related.  Similar products obviously attract similar customers and use similar trade channels.  A devotee of kava is likely both to consume it at the Kava Bar and purchase it off the shelf.

However, the case law indicates a much more thorough analysis than this.  In *Florida International University Board of Trustees*, the court determined this factor favored the defendant Florida National University ("FNU"), despite the plaintiff FIU and defendant FNU both being post-secondary educational institutions and both serving the same cohort customer: students.  *Id.* at 1279.  Pouring through several affidavits and exhibits presented by FNU, the court found the "differences between the schools' respective student populations."  *Id.* ("[A]bout 70 percent of FNU's students are seeking either associate's degrees or attending ESL programs that are not offered by FIU.  In other words, FNU's predominant customers are in the market for educational services that FIU simply doesn't provide.").  This was enough to determine the two schools did not serve the same customer base.  *Id.*

Here, neither party has presented enough for the Court to make a meaningful determination as to their customer base.  Because SPEC's only use of the Mark exists on the stand-alone bar and Nakava LLC uses it on only products, there is no guarantee that the two entities cater to the same clientele.  Most importantly for the summary-judgment analysis here, neither party provides any proof in its favor.

### 5.      The Similarity of Advertising Media

For the fifth factor, the Court considers the advertising media used by each party. *Deltona Transformer Corp.*, 115 F. Supp. 2d at 1369.  Clearly, "[i]f a plaintiff and defendant both use the same advertising media, a finding of likelihood of confusion is more probable."  *Id.*  "A court may properly consider the overall advertising campaigns."  *Id.*

In its papers, Nakava LLC states: "SPEC and Nakava LLC advertise and promote their products on social media and the internet."  SPEC states: "Nakava LLC does not advertise or sell to the retail public, including its own website and social media."  Like the previous factor, neither party has submitted sufficient record evidence to prove this one.

### 6.      The Defendant's Intent

"In determining whether consumer confusion is likely, the Court must also examine the defendant's intent, to determine whether the defendant 'had a conscious intent to capitalize on the plaintiff's business reputation, was intentionally blind, or otherwise manifested improper intent.'"  *Fla Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1281 (quoting *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648 (11th Cir. 2007)). "[L]ikelihood of confusion can be found as a matter of law if Plaintiff shows that Defendants intended to derive benefit from Plaintiff's trademark."  *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1354 (S.D. Fla. 2002).  "While objective

factors are most important in assessing the likelihood of confusion between two marks, courts also examine the defendant's subjective intent." *Canes Bar & Grill of S. Fla., Inc. v. Sandbar Bay, LLC*, 343 F. Supp. 3d 1236, 1244 (S.D. Fla. 2018). Subjective intent, no matter the cause of action or type of proceeding before a court, almost never can be proved by direct evidence. *See Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 1981 WL 40564, at *6 (N.D. Ga. May 15, 1981) ("Since improper motive is rarely, if ever, admitted . . . the court can only infer bad intent from the facts and circumstances in evidence.").

Nakava LLC argues that SPEC's intent "to derive benefit from the Mark could not be clearer: SPEC is using the Mark." It cites to *Canes Bar* and *Kaisha* for support. However, in *Canes Bar*, the trademark dispute involved not only a wordmark but also a logo. *See* 343 F. Supp. 3d at 1245. This, alone, is enough to distinguish the case. *Kaisha* involved counterfeited reproductions of trademarking. *See* 188 F. Supp. 2d at 1354–55.

The Court cannot accept Nakava LLC's position, in and of itself, as sufficient to determine this factor, either. If using a trademark is sufficient evidence to prove the defendant's intent to derive a benefit from the plaintiff's trademark, then this prong would always favor the plaintiff. Accepting this argument, there can then be no situation where a defendant prevails on this factor—and, by extension, the entire case.

As is the case for several of the other factors, neither side presents much evidence in its favor, electing, rather, to offer cursory and self-serving arguments, such as: "With respect to the seventh factor, the evidence shows that SPEC's intent was to continue to operate its kava tea bar under the same name that it had been utilizing since 2004. SPEC did not intend to derive benefit from Plaintiff's trademark." Neither Nakava LLC's nor SPEC's position and accompanying evidence are sufficient for this factor.

### 7.    Evidence of Actual Confusion

As for the seventh and final factor, "evidence of actual confusion . . . is the best evidence of the likelihood of confusion . . . ." *Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1282.   There is no litmus test; cases instruct of no magical amount of evidence of customer confusion a party must show.   *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 937 (11th Cir. 2010).   In fact, "the quantum of evidence needed to show actual confusion is relatively small."   *Id.*   And, the burden on the defending party is much greater than that on the moving party.   As the Fifth Circuit has stated: "[R]eason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof."   *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971).

Here, Nakava LLC provides an affidavit from Bowman that it claims demonstrates actual evidence of customer confusion.   In the affidavit, Bowman states that he has learned "of several instances . . . where customers of the Nakava brand have gone to SPEC's 'Nakava' kava bar expecting to find Nakava brand kava."   He continues: "Customers have advised me they were surprised and confused to learn that SPEC's Nakava bar does not sell Nakava brand kava."   SPEC's response is that these two assertions are merely self-serving and rely only on hearsay statements of customers. SPEC then argues that "it is unlikely that *wholesale* customers across the United States are (a) visiting SPEC's stand-alone location, and (b) becoming confused as to the product sold at the location."[4]

---

[4] Emphasis added.

SPEC's hearsay argument is well taken.   There is no doubt that Bowman's assertion of several customers' confusion is inadmissible hearsay.   It is offered only to show actual evidence of customer confusion; there is no exception under which it would be admissible.   The Court cannot consider this on a motion for summary judgment.   *See* Fed. R. Civ. P. 56(c)(4) (An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out *facts that would be admissible in evidence*, and show that the affiant or declarant is competent to testify on the matters stated." (emphasis added)); *see also Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("[I]nadmissible hearsay cannot be considered on a motion for summary judgment."); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Memory Mgmt. Controllers, L.P. v. Motorola, Inc.*, 2000 WL 378563, at *2 (N.D. Ind. Mar. 16, 2000) ("A summary judgment motion . . . is one of the few pretrial motions in which the rules of evidence apply . . . ."). *But see Houdini v. Good Baskets, LLC*, 166 F. App'x 946, 947 (9th Cir. 2006) (holding the district court did not abuse its discretion in considering hearsay evidence on this factor on a motion for a *preliminary injunction*).

But, even if this assertion by Bowman were admissible, it would not be sufficient to entitle Nakava LLC to summary judgment.   Assuming the Court could consider Bowman's statement, the number he throws out—five—is not dispositive to determine actual confusion. *Compare Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1341 (11th Cir. 1999) (determining one instance of customer confusion was sufficient to establish this factor), *with Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980) (holding that three instances of customer confusion was not sufficient).   What

is concerning to the Court is Bowman's inability to state with certainty an actual number—any number.  At his deposition, when pressed, Bowman answered that question: "I can't off the top of my head think of all of them, but I know I believe it's more than five."  This, simply, falls well below the necessary burden of production for Nakava LLC.

The Court finds out-of-district *S Industries, Inc. v. JL Audio, Inc.*, 29 F. Supp. 2d 878, 893 (N.D. Ill. 1998), highly instructive.  There, the Illinois district court determined the plaintiff failed to establish actual confusion for the same reason presented here.  *See id.*  The court wrote: "Plaintiff relies on vague allegations of unknown numbers of consumers who allegedly called or wrote to [p]laintiff's related company STR complaining about JL Audio's Stealthboxes.  However, [p]laintiff has only C. Stoller's hearsay testimony as proof of these allegations—and such testimony is inadmissible." *Id.*  The court then pointed to Seventh Circuit precedent to explain that the plaintiff "essentially ask[ed] this court to . . . craft[] a new hearsay exception to the Federal Rules of Evidence for paraphrases of state of mind declarations by unknown declarants." *Id.* (citing *Smith Fiberglass Prods., Inc. v. Ameron, Inc.*, 7 F.3d 1327, 1330 (7th Cir. 1993) ("Without hesitation we refrain from adopting such a recommendation.")).  As for the seventh and final factor, Nakava LLC has failed to show actual confusion.

**V.    <u>CONCLUSION</u>**

There remain genuine disputes as to material fact that preclude both parties from summary judgment.  The factfinder must determine whether Nakava LLC abandoned the Mark at some point between 2005 and 2019.  Further, assuming Nakava LLC owned the Mark for the duration of that time period, a factfinder must determine whether SPEC's continued use without Nakava LLC's permission is likely to cause confusion in the

marketplace.  For the foregoing reasons, Plaintiff's MSJ (DE [50]) and Defendant's MSJ

(DE [56]) are **DENIED**.

      **DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 10th day of

August 2020.

                                        RAAG SINGHAL
                                        UNITED STATES DISTRICT JUDGE

Copies to counsel via CM/ECF